The next matter on our calendar is United States of America v. George Campbell. Counsel for Mr. Campbell. Good morning. Good morning, your honors. May it please the court. My name is Edward Zast from the Federal Defenders of New York for George Campbell. Both this court and the Supreme Court have made clear that a district court necessarily abuses its discretion when it makes an error of law. In this case, the district court committed two related legal errors when it denied Mr. Campbell's motion for compassionate release. Both errors appear in the appendix at page 245, which is the district court's ruling. First, the court ruled that even under the new First Step Act regime, Mr. Campbell, quote, would be sentenced to 60 years imprisonment. Second, the court ruled that granting FSA relief would have, quote, no impact on Mr. Campbell's sentence because he benefited more from the extradition agreement than he would from the unstacking of the 924C sentences, and so relief under 3582C would have no impact. Both of these conclusions are erroneous. If he were sentenced today under the new FSA regime, Mr. Campbell would face a mandatory minimum of just 35 years for all of his offenses. Even if you are right, Judge Deary also says in his opinion at A246 that the court's stated intention was clear. Mr. Campbell was to serve a full 50 years. Doesn't that suggest that that's what Judge Deary wanted? Judge Deary wanted at least 50 years, and in fact, he elsewhere indicated that there should be no good time credit granted for that 50 years, which also seems to suggest that what he really wanted was a full 50 years. I don't agree with that, Judge Chin, for the following reasons. First, in context, the judge here is responding to a different argument, an argument about what he would have done back in 2003 if the FSA had been in effect then, and I don't dispute this. He's completely right. His intention at that time, as he said in his amended judgment, was that Mr. Campbell was not to receive good time credit. I think the judge's view at that point is because there were co-defendants who were getting astronomical sentences as well but were not getting the benefit of an extradition agreement because they remained here. He did not want to come down, but I don't would do today if he understood all the implications of the First Step Act. So, in the paragraph before the one you quoted me, Judge Chin, on 245, says that as the defendant concedes under the new FSA regime, he would be sentenced to 60 years in the District Court. It indicated in a sentence that he would be sentenced to 60 years, but the very next sentence of counsel's memorandum talks about the maximum being 60, not the minimum being 60. What then happens is the government, in its response, which is in the appendix at 238, they run with this mistake, and they're the ones who plant the idea in the judge's mind that this whole thing is just technical because he'd still get 60 years, and so who cares? He's doing 50. That's what leads to this mistake. And so, in reality, there's a huge difference between a minimum or mandatory sentence in 2003 of 150 years, obviously, and a mandatory minimum of just 35 years. Could you comment on the government's Rule 28J letter submission pointing out that several circuits have held that Congress specifically intended that the anti-stacking amendment wouldn't apply to defendants like your client sentenced prior to the First Step Act's enactment? Does that suggest that some courts would not hold that the 35 years that you're saying was the correct calculation is, in fact, right? Well, it's not that those courts would disagree with the calculation. They may say that even so, even though he would get only 35 as a mandatory minimum today, a court cannot consider that disparity even as a factor in deciding whether extraordinary and compelling circumstances exist. But more directly to your point about the 28J letter, I have several responses. The first one is that the government in that letter is now arguing that, as some circuits say, the court can't take it into account even along with other factors in deciding whether compelling circumstances exist. That argument was not made in the government's brief. The government's brief just says that, and this is on page 16 of their brief, that Congress's decision would be thwarted if stacked sentences, quote, necessarily constituted an extraordinary and compelling reason. So because they didn't put it in their brief, we didn't address it in our reply, but this is essentially a new argument, and you can view that as waived. Having said that, there is a circuit split. Judge Carney, you are right. The majority of circuits at the moment support the view that you can, in fact, consider that disparity along with other factors in deciding whether it's in Brooker. Brooker says that the First Step Act freed district courts to consider the full slate of extraordinary and compelling circumstances that an inmate might bring. Even without saying that this is retroactive, they are free to consider everything. That's what Brooker says. That's exactly right, and this idea that Brooker's holding along with some of the is just wrong. As the Fourth Circuit has pointed out, there's a huge difference between saying that every defendant automatically gets the retroactive benefit of the amendments of the 24C unstacking rules, and to say that what we're saying, which is even though every defendant doesn't automatically get it, a court can look to the fact that in Mr. Campbell's case, he had a 150-year mandatory sentence and now just has 35. That's not inconsistent at all with anything Congress had said. In fact, in Brooker, the court ruled that there's only one statutory prohibition on what courts can consider as extraordinary and compelling cannot constitute an extraordinary and compelling reason, but we're not arguing about rehabilitation alone. Counsel, this all comes down to the discretion of the judge. So Judge Deary had all this information arguably in front of him, and he declined to exercise his discretion to reduce Mr. Campbell's sentence. Where do we go from there? We're not going to rule a judge on exercise of his discretion. The problem, Judge Pooler, is that when a court's discretion is influenced by legal or factual mistakes, the court will rule that. In fact, that's automatically by definition an abuse of discretion, and so if this court were in fact analyzing such things as, you know, it would be looking at the seriousness of the crimes, which were 30 years ago, or is Mr. Campbell still a danger to society and factors like that? Instead, he's saying that the unstacking of the sentences is just a technical change that would have no practical impact on the sentence he's serving, but that's wrong. It would have a his exercise of discretion rests on legal error, and therefore it's an abuse of discretion under established law. Is that right? That's exactly right, Judge Carney, but even if you don't, or some of you don't agree with that, there's a separate line of cases which says that where a judge's sentencing remarks create ambiguity as to whether a judge understood, fully understood the scope of his or her discretion, the court will remand there as because the court doesn't want to leave a long sentence in place when the sentence may be, you know, based on a mistake, and, you know, I'm shifting a little bit from the law to justice for a second, and the court I know cares deeply about justice. This is a man who, if he does not get relief under this statute, is going to die in all likelihood in prison after he has served 25 years for these crimes, and that may be necessary. That may be the appropriate sentence, but the problem is that if that is the appropriate sentence, it should be because Judge Deary says so, and it's clear that he understands exactly that that's what he intends. Can I ask you to clarify one thing for me with our presider's indulgence? His motion is for decides that he was incorrect, that it's not, it wouldn't be a reduction 60 years, maybe it'd be 35 years, but nonetheless, he thinks that a 50-year sentence is appropriate. He would not be released immediately. It's a sentence reduction, but it wouldn't eventuate in his immediate release. Is that, am I correct in understanding that? A hundred percent correct. In fact, Brooker makes that clear, that although we all call these motions for compassionate release, it's a misnomer. It's really a motion for a sentence reduction. The court could leave the 50 years in place. The court could go anywhere from 50 down to time served, but there's nothing in this record that indicates that the judge realized that. In fact, it's the opposite. The judge says granting relief would have no impact on the sentence. Well, that doesn't make sense. Of course, it would have impact on the sentence. He might want to deny it, but to say they would have no impact suggests that he's confused as defense counsel was, and I presume the government was. This is, although I think it's clear what the judge's authority is now, it's not obvious. You have to trace through a long line of cases. You've returned three minutes for rebuttal. You've already overstepped this, but I will not take your rebuttal away and let's hear from the government. Thank you, your honors. Good morning, your honors. May it please the court. My name is Robert Pollack. I am an assistant United States attorney in the Eastern District of New York, and I represent the United States on this appeal. Judge Geary sentenced George Campbell to effectively the 50 years, not withstanding the longer pronounced sentence for his role in committing seven armed robberies of treaty limited the length of the sentence. I think that's right, your honor, and I think that goes to Judge Chin's point that Judge Geary's intention was very clear. Judge Chin pointed out two ways in which his intention was clear. One, he said, my stated intention is clear. That's a quote from his decision below. He also entered an order, which he didn't have to enter, that essentially took away good time credit by ordering that any good time credit would be credited toward the pronounced sentence rather than the effective 50 year sentence. An additional- That said, it's certainly possible that Judge Geary was wrong in terms of believing that he had to do, he would have to do a 60 year sentence under the FSA. And what would be the harm in back to make sure that he understood his options, to make sure that he understood that he could go down to 35 years under the FSA in the recent case law, and then let him decide whether he wants to stick with 50? Well, your honor, I don't think Judge Geary did make any misunderstanding of the law, but the harm is a harm to the finality here. It would indicate to Judge Geary that there was some error in a decision below when there wasn't one. And additionally, I don't think Judge Geary would be intimidated by our remanding, and I think he would do what he wants to do. But I'm sure that's right, your honor. Judge Geary presided over the trial in this case. He sentenced this defendant actually twice. There was a remand to correct some errors in the calculation. This defendant has been a serial. Do you agree that under the current law, a sentence could be as low as 35 years? I do agree. And does it not seem that Judge Geary might not have understood that? I think he did understand that, your honor. Based on what? Based on what do you think he understood that he could go down to 35 years? Anything he said that would lead us to believe that he did understand that? Well, there are only three changes of law that the defendant invokes now, only one of which was invoked below, which is why Judge Geary didn't dwell on the other two. They weren't cited. The one that was invoked below, which is reasserted now, is the First Step Act, as interpreted by Brooker. And of course there, Judge Geary is absolutely correct. The reduction of the sentence stacking that the judge would now have discretion to do wouldn't make any difference. The defendant has already received that benefit effectively through the extradition treaty or the extradition agreement. The other two changes in law are Booker making the guidelines advisory. And I guess depending on how you count, it's two cases, Dean from the Supreme Court and this court's interpretation and sort of reassertion or application of Dean in the United States versus Brown. As for the first of those, I mean, Booker, the notion that Judge Geary might not have realized that is sort of fanciful. This is the touchstone of all federal sentencing. He invokes it in every plea hearing and every sentencing hearing. Of course, he understood that now he has discretion to sentence outside of the guidelines ranges. As for Dean and Brown, of course, the judge is presumed to understand the law. But even setting that aside here, the defendant really overstates the holding of those cases, or they hold something more narrow than is implied here. They only hold that district courts are not prohibited from considering the severity of mandatory consecutive sentences, not that they must consider it. This court in Brown restated the holding of the Supreme Court in Dean, quote, a sentencing judge selecting a sentence for a predicate offense was not prohibited from considering the severity of a mandatory consecutive minimum sentence and has the discretion, but not the obligation to consider such severity. Let me interrupt for just a second. I'm still looking at the paragraphs on page 245 and what Judge Geary said, which to me suggests that he understood that the defendant had conceded and that the revised application of the revised law would that he is has to be has to be sentenced to 60 years, and that this whole proceeding has no impact, whereas you've just agreed that one could recalculate the sentence and arrive at 35, which could have an impact. Why shouldn't we be concerned about his statements evidencing that understanding? I agree that reopening the sentencing, having a de novo resentencing in which Judge Geary would have more discretion than he had in 2003 could result in a lower sentence, if that's what if that's how Judge Geary were to exercise his discretion. But what he says here is that under the new FSA regime, he would be sentenced to 60 years imprisonment. That's correct. The only thing that the FSA regime has changed is the component of the sentence, which is built of the 924c convictions. The other component is on effect. Is it correct? Isn't there a difference between he would be sentenced to 60 years and he could be sentenced to 60 years? He could be sentenced to 35 years and a day. The only change in law that Judge Geary is, that Judge Geary was asked here to address, and the only one that he's expressly elaborating upon, is the change in the the First Step Act as interpreted by Brooker. So that change only changes the stacking of 924c's. It doesn't affect the change on the underlying predicate offenses. So it is correct that under the FSA, the only, the only, so that essentially is importing all of the reasoning, all the weighing of the 3553a factors, the whole history of this case, into the present and saying the only change here under the FSA is this 924c stacking, and that benefit is smaller than the benefit that this defendant has already received under the extradition. So it makes no difference he still gets 60 years. That's because Judge Geary imposed the statutory maximum on the predicate offenses, which was the third point I was about to get to, to add to Mr., to excuse me, to Judge Chin's point about, about Judge Geary making his intention clear. Back in 2003, although Judge Geary did have mandatory guidelines, as, as the defendant points out, he was not obligated to impose a statutory maximum on the predicate offenses. The guidelines range on that component of the sentence was 260. How do you, how do you respond to Mr. Zas's argument that the language that I quoted earlier reflects Judge Geary's intention back at the original sentencing and not necessarily what his intention would be today? So Judge Geary, as, as I was saying a moment ago, Judge Geary, I mean, he presided over the trial. He sentenced this defendant twice. He's received many successive habeas petitions. He's decided this motion, this motion, in fact, was filed as serial pro se applications, which he generously construed as a motion for compassionate release, which then the government responded to. Then there was a supplement from counsel. Then the government responded again. Judge Geary has, has had abundant opportunity. I would say an opportunity to reflect on this case, on this defendant, to consider the sentence he imposed, and to reconsider the sentence he's imposed. And the through line from day one till today is that the defendant should serve the 50 years. As Judge Pooler pointed out at the beginning, there's reason to believe that Judge Geary thought that 50 years wasn't enough. That was the maximum he could impose under- And he was disappointed about that, wasn't he? It seems to me- He was disappointed that the extradition treaty limited the sentence to 50 years. I think he was, it seems to me he was disappointed, Your Honor. And, and maybe especially because that was a boon that the defendant received by successfully fleeing. That, that, that limit on the sentence, on his sentencing exposure, which would not apply to a similarly situated defendant or his co-defendants, didn't even, wouldn't even have applied to him if he hadn't fled successfully, escaped. He escaped from custody and fled all the way to Costa Rica and was extradited years later. And so that, that, that, that flight from justice, although it gave him a sentencing enhancement for, for obstruction on the underlying offenses, it really was beneficial to him. It created this, this sentencing gap. He couldn't be sentenced to more than 50 years. And so Judge Geary has been, although he's been quite indulgent of this defendant and has, has given him many opportunities and has had many pro se submissions supplemented by counsel, Judge Geary's intention really couldn't be clearer. And he said himself in the decision below, his stated intention was clear and it remains clear. This is the right sentence for this defendant in Judge Geary's judgment. And this court has affirmed that and there was no error in his reasserting it and not fully articulating all the, all the, the full scope of his discretion and the sources of his discretion and the nuances in his discretion just to deny this motion. He didn't do that. It's true. He didn't cite Booker and he didn't cite Dean and Brown. Defense counsel did not invite him to do all that. He did two things. One thing he did was he said that unstacking the defendant's 924C sentences wouldn't actually change anything as a practical matter because he already got a bigger benefit from that. That is absolutely correct. That mere fact alone, unstacking the 924C sentences doesn't change anything. And while it's true, he would have the discretion in a from the guidelines on the predicate offenses. He reiterated what he's been saying since day one. The 50-year sentence is the right sentence. It's what he intended to impose. It's within his judgment to impose that. There was no abuse of discretion here. And unless your honors have any further questions, I'll rely on the papers for remainder of the argument. Thank you, counsel. Ms. Tazaas, you've retained three minutes for rebuttal. Please use them now. Thank you, your honors. In my three minutes, I'd like to make three very brief but very important points. The first point is in response to you, Judge Pooler, I'm not aware of any record evidence suggesting that Judge Deary was unhappy that he had to impose only 50. I don't know if there's a site that someone has that I don't have, but the reason, Judge, as far as I know... I thought his language that he was grudgingly accepting the 50-year maximum because of the treaty. I've just never seen that language. I don't recall it being cited in the government's brief. So the point I'd underscore is despite what the government says, Judge Deary has never imposed this sentence as a matter of discretion. Back when he was sentenced in 2003, when Mr. Campbell was sentenced, the court had no discretion to exercise. I'm old enough, I confess, to remember that when the guidelines were mandatory, this judge had absolutely no choice. He had to impose 150 years. And because of the extradition treaty, he had to cap the sentence at 50 years. Unless I'm missing some portion of the record, the judge never said that that sentence is the right sentence. It's just the sentence he had to impose. Similarly here, in a motion for compassionate release, he doesn't say it's the right sentence. He just says that, and this really comes mostly from the government's submission in the district court, that the sentence would have been 60 years. So is this all technical and sort of nonsensical? But that's wrong. The government conceded to you that he could receive 35 for all of his crimes. And by the way, the national average sentence for federal murder is 25. This guy is currently doing 50. He's going to die in prison. And as the government concedes, he could receive a much lower sentence today. So that's the first point. Judge Chin asked the prosecutor if there was any record evidence to suggest that the court understood that the sentence today, the mandatory minimum, is 35 years. And the government spoke at length, but never cited anything in the record about a 35-year reference. And that's not surprising. Again, if you go back to page 238 in the government's submission to the judge, it tells him that his sentence would have been 60 years in prison. Not that that's the right sentence he should get, but as Judge Deary interpreted it, that that is what he would have to get. And that's wrong because, as the government again conceded, because of Dean and Brown and those intervening changes which no one brought to the court's attention. Finally, I would just like to end on the equity point here. If the court does remand, it would not be, obviously, a remand for a new trial or a lengthy proceeding. It would be a brief remand so that we're sure, that we know for sure, that the judge understood all of his available sentencing options and declines to exercise it. If he declines to exercise it, then this would be gone and we would be confident. The problem is that the court should not leave in place a sentence which is effectively a death in prison sentence that may, in fact, be based on errors. It would not be costly, it would not take much time, and we would know for sure. And that's, we think, the just outcome here is a brief remand. We're not saying the judge has to come down at all, just that the record is muddy as to exactly whether the for all those reasons, we ask you to remand for reconsideration in light of the correct legal framework and the right information. Thank you so much. Thank you, Mr. Sars. Thank you both for this interesting case. We'll reserve decision.